**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ABDUL MAJEED ZAZAI,

Petitioner,

v.

3:26cv0849

ELECTRONICALLY FILED

WARDEN, MOSHANNON VALLEY PROCESSING CENTER, ET AL.,

Respondents.

**MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART PETITIONER ABDUL MAJEED ZAZAI'S PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)**

Pending is Abdul Majeed Zazai's counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).

## I. BACKGROUND

On May 7, 2026, Petition filed his habeas petition. (*Id*.).

Petitioner's habeas petition contains one (1) claim: that Petitioner's continued detention since May 2024 violates his right to substantive and procedural due process under the Fifth Amendment to the Constitution. (*Id*. at 9).

As relief, Petitioner seeks that this Court: (1) "[i]ssue an order directing Respondents to show cause why the writ should not be granted within three days;" (2) "[d]eclare that [Petitioner's] continued detention violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution;" (3) "[i]ssue a Writ of Habeas Corpus;" (4) "hold a hearing before this Court if warranted" and "determine that [Petitioner's] detention is not justified because the government has not established by clear and convincing evidence that [Petitioner] presents a risk of flight or

danger in light of available alternatives to detention;" (5) order Petitioner's release "with appropriate conditions of supervision if necessary, taking into account [Petitioner's] ability to pay a bond;" (6) "issue a Writ of Habeas Corpus and order [Petitioner's] release within 30 days unless Respondents schedule a hearing before an immigration judge where: [i] to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present; and [ii] if the government cannot meet its burden, the immigration judge order [Petitioner's] release on appropriate conditions of supervision, taking into account [Petitioner's] ability to pay a bond;" and (7) "[g]rant any other further relief this Court deems just and proper." (*Id.* at 10).

On May 22, 2026, Respondents filed a brief in opposition to Petitioner's habeas petition, wherein they assert that Petitioner's habeas petition should be denied because: (1) "as a statutory matter," Petitioner is by definition an arriving alien who came into the United States at a port of entry as an applicant for admission; and (2) "as a constitutional matter, because [Petitioner] is an arriving alien, the Due Process Clause does not entitle him to any further procedures beyond those prescribed by statute." (Doc. 10 at 1–2).

On June 3, 2026, Petitioner filed a reply brief in which he: (1) reasserts the arguments made in his habeas petition; (2) contends with Respondents' argument that "Petitioner can be detained in perpetuity under 8 U.S.C. § 1225(b)(2)(A) once he is designated as an arriving alien;" and (3) responds to Respondents' application of the *German Santos*[1] framework to

[1] In *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020), the United States Court of Appeals for the Third Circuit laid out a four-part framework to determine when the detention of a civil detainee, who has been detained pursuant to 8 U.S.C. § 1226(c), has become unreasonable.

conclude that his detention violates his rights under the Fifth Amendment's Due Process Clause under the very same framework. (Doc. 13 at 2, 5–6).

Accordingly, Petitioner's habeas petition has been fully briefed and is ripe for adjudication.

## II. Discussion and Conclusions

The Record supports that: (1) Petitioner is a native and citizen of Afghanistan; (2) on March 30, 2024, he entered the United States ("U.S.") from Mexico and presented himself at the port of San Ysidro to apply for admission via an appointment made with the "CBP One" application; (3) Petitioner did not have a visa or any other admissible documents to enter the U.S.; (4) Petitioner was not admitted, paroled, or released on his arrival, but instead was turned over to the San Ysidro Admissibility Enforcement Unit of ICE for further disposition; (5) Petitioner has remained continuously in custody since March 30, 2024; (6) he currently is detained at Moshannon Valley Processing Center ("MVPC"); and (7) Petitioner has pending removal proceedings (*i.e.*, there is not a final order of removal in effect as to Petitioner). (*See generally* Docs. 1, 10, 13).

The issues before the Court are: (1) whether Petitioner is subject to discretionary detention pursuant to 8 U.S.C. § 1226(a) ("Section 1226(a)"), as contended by Petitioner, or mandatory detention under 8 U.S.C. § 1225(b) ("Section 1225(b)") as contended by Respondents; and (2) what relief, if any, is Petitioner entitled to because he has been detained for 31 months.

Under 28 U.S.C. § 2241(c), a prisoner or detainee may obtain habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3); *Maleng v. Cook,* 490 U.S. 488, 490 (1989). Petitioner filed his Petition

while he was detained within the jurisdiction of this Court, he remains detained by DHS, and he asserts that his continued detention violates his rights under the Fifth Amendment's Due Process Clause. This Court, therefore, has jurisdiction over his Petition. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

As a threshold step in determining the legality of Petitioner's detention, the Court must identify the grounds for his detention. *See Appiah v. Lowe*, Civ. No. 3:24-2222, 2025 WL 510974, *3 (M.D. Pa., Feb. 14, 2025) (noting that in a habeas case challenging ICE detention, "[t]he Court must first determine the basis for [the petitioner's] detention").

Based on the facts supported by the Record stated above, which establish that Petitioner was taken into custody promptly following his entry into the United States and has remained in custody since that time, the Court finds that Petitioner's detention is governed by Section 1225(b) and not Section 1226(a).

The next determination for the Court to make is whether Petitioner, whose detention is governed by Section 1225(b) is entitled to any relief based on his detention for approximately 31 months.

In *Ehsan v. Blanche*, Civ. No. 3:26-878, 2026 WL 2321377 (W.D. Pa. Aug. 11, 2026) (Horan, J.), my learned colleague, the Honorable Marilyn J. Horan, recently explained:

> In *Jennings* [*v. Rodriguez*], the Supreme Court determined that § 1225(b) "mandate[s] detention until a certain point and authorize[s] release prior to that point only under limited circumstances." *See Jennings v. Rodriguez*, 583 U.S. 281, 301 (2018).[4] As such, it held that § 1225(b) cannot "reasonably be read to limit detention to six months." *Id.*; *cf. Zadvydas v. Davis*, 533 U.S. 678, 699–701 (2001) (construing § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to secure removal" and holding that six months is a presumptively reasonable period).
>
> However, although "Petitioner's detention under 8 U.S.C. § 1225(b) does not statutorily entitle him to a bond hearing pending his asylum proceedings[,]" courts in this Circuit have "held 'that an arriving alien such as Petitioner has a

> constitutional due process right to a bond hearing once his detention becomes unreasonable to the same extent as an alien who is subject to removal under § 1226(c).'" *See Akhmadjanov v. Oddo*, No. 3:25-CV-35, 2025 WL 660663, at *2–4 (W.D. Pa. Feb. 28, 2025) (quoting *A.L. v. Oddo*, No. 3:24-CV-302, 2025 WL 352471, at *2 (W.D. Pa. Jan. 6, 2025); *see also Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (collecting cases which determined "arriving aliens detained under § 1225(b) have a due process right to avoid unreasonably prolonged detention"); *German Santos*, 965 F.3d at 210-11 (concluding that, although the Supreme Court's decision in Jennings "foreclosed reading the statutory text as guaranteeing periodic bond hearings," the duration of a petitioner's detention can be used to establish a base level of concern before evaluating it "along with all other circumstances[.]").
>
> Namely, the *A.L.* court determined that, "[i]n assessing whether [§ 1225(b)] detention has become unreasonable[,]" a district court should apply "the same factors laid out in German Santos." *A.L.*, 2025 WL 352471, at *3. As such, the Court will utilize the four-factor test from *German Santos*; and thus evaluate the following factors: (i) the duration of detention; (ii) whether the detention is likely to continue; (iii) reasons for the delay; and (iv) whether the detainee's conditions of confinement are "meaningfully different from criminal punishment." *German Santos*, 965 F.3d at 210–11.
>
> > [footnote 4: "With a few exceptions not relevant here, the Attorney General may 'for urgent humanitarian reasons or significant public benefit' temporarily parole aliens detained under §§ 1225(b)(1) and (b)(2). 8 U.S.C. § 1182(d)(5)(A). That express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released." *Jennings*, 583 U.S. at 300.]

*Ehsan*, 2026 WL 2321377, at *2.

The Court agrees with Judge Horan's thorough, well-reasoned analysis, *supra.*, in *Ehsan*. Accordingly, while Respondents argue that *German Santos* does not control this Court's analysis because it dealt with a noncitizen detained under 8 U.S.C. § 1226(c), the Court finds that the due process considerations identified in *German Santos* also apply to a noncitizen, such as Petitioner, who is detained under Section 1225(b). Therefore, the Court will evaluate the facts of this matter in light of the following four (4) *German Santos* factors to determine whether Petitioner's detention has become unreasonably prolonged.

The four (4) *German Santos* factors are: "(i) the duration of detention; (ii) whether the detention is likely to continue; (iii) reasons for the delay; and (iv) whether the detainee's conditions of confinement are "meaningfully different from criminal punishment." *German Santos*, 965 F.3d at 210–11.

When considering whether detention has become unreasonable: "The most important factor is the duration of detention. While there is no bright-line threshold of time that permits a court to presume that detention has crossed the line from reasonable to unreasonable, detention does become '"more and more suspect"' the longer it continues." *Foula Bah v. Oddo et al.*, Civ. No. 3:26-1393, 2026 WL 2561261, at *3 (W.D. Pa. Aug. 31, 2026) (quoting *German Santos*, 965 F.3d at 211 (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011)). *See also Niangane v. Mullin et al.*, Civ. No. 3:26-815, 2026 WL 2280905, at *3 (W.D. Pa. Aug. 7, 2026) (Haines, J.) ("The first and 'most important' factor is the duration of detention") (quoting *German Santos*, 965 F.3d at 210). Thus, in *German Santos*, the Court of Appeals for the Third Circuit noted: "in *Chavez-Alvarez*, we held that a lawful permanent resident's detention became unreasonable sometime between six months and one year. *German Santos*, 965 F.3d at 211 (citing *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)).

Here, Petitioner has been detained for approximately 31 months. (*See* Doc. 10-4). This is well beyond the threshold courts have found to be unreasonable. *See Van v. Oddo*, Civ. No. 3:25-322, 2025 WL 3492736, at *6 (W.D. Pa. Dec. 5, 2025), *reconsideration denied*, 2026 WL 395068 (W.D. Pa. Feb. 12, 2026) (concluding a 15 month detention without a bond hearing was unreasonable); *Akhmadjanov*, Civ. No. 3:25-35, 2025 WL 660663, at *4 (finding that the petitioner's 17+ month duration of detention had become unreasonable); *Rivas v. Oddo*, Civ. No. 3:22-223, 2023 WL 4361140, at *2 (W.D. Pa. June 27, 2023) (determining that a 14 month

period of detention without a bond hearing was unreasonable); *Deonarine v. Oddo*, Civ. No. 3:25-81, 2025 WL 1919726, at *2 (W.D. Pa. July 11, 2025) (holding a 20+ month detention without a bond hearing was unreasonable). Thus, this first *German Santos* factor weighs strongly in favor of Petitioner.

The second *German Santos* factor to consider is "whether the detention is likely to continue," *i.e.*, what is the procedural posture of Petitioner's removal proceedings. *German Santos*, 965 F.3d at 211. With respect to this query, the Court takes judicial notice of the Automated Court Information page of the Executive Office for Immigration Review ("EIOR") website,[2] which indicates that: (1) on October 2, 2025, an immigration judge ("IJ") ordered Petitioner's removal from the United States; (2) on November 3, 2025, the Board of Immigration Appeals ("BIA") received Petitioner's appeal of the IJ's decision, which currently is pending; and (3) Petitioner filed a brief with the BIA on March 10, 2026, DHS did not file a brief, and the briefing schedule has now expired. Further, based on this information, the Court finds that if the BIA affirms the IJ's decision, it is a reasonable possibility that Petitioner will appeal that decision to the appropriate Court of Appeals.

Given the current procedural posture of Petitioner's removal proceedings, as detailed above, the Court finds that Petitioner's detention is likely to continue for the foreseeable future, and thus, this *German Santos* factor weighs in Petitioner's favor. *See German Santos*, 965 F.3d at 212 (concluding that this factor weighed in the petitioner's favor where the petitioner was awaiting BIA decision and potential Third Circuit review); *Foula Bah*, 2026 WL 2561261, at *3 (concluding that this *German Santos* factor weighed in favor of the petitioner being detained pursuant to Section 1226(a) because "[a]lthough the parties have already finished briefing before

[2] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited October 27, 2026).

the BIA . . . the BIA has not yet issued a decision, and upon receiving a decision, there is a possibility of further appeal to the Third Circuit.”).

The third *German Santos* factor is the reason for the delay. As explained by my learned colleague, the Honorable Marilyn J. Horan, in *Foula Bah*, *supra.*:

> in assessing the impact of the reasons for delay upon the reasonableness of detention, a petitioner’s “appeals and applications for discretionary relief [are not held] against him[.]” [*German Santos*, 965 F.3d at 212]. However, neither are delays or alleged errors held against the government “[a]bsent carelessness or bad faith[;]” for “[n]o system of justice can be error-free, and those errors require time to fix.” *Id*. (citing *Diop*, 656 F.3d at 234).

*Foula Bah*, 2026 WL 2561261, at *3.

Here, Respondents do not argue that Petitioner has been the reason for any delay in his removal proceedings, and there is no evidence of record that Respondents have acted carelessly or in bad faith with respect to Petitioner’s removal proceedings. Accordingly, the Court finds that this *German Santos* factor is neutral as to both parties. *See id*. (explaining: “Here, neither party alleges that Respondents have improperly delayed the proceedings, but Respondents allege that Petitioner’s request for a one-month continuance before the BIA should be held against him. Petitioner’s one minor continuance, however, cannot ‘credibly be considered as a factor in the length of his detention’ because the [c]ourt would find his detention unreasonable even at ten months (his current detention length minus the length of the continuance)” and concluding: “As such, this factor is neutral as to both parties.”) (citations omitted).

Finally, the fourth *German Santos* factor is whether the detainee’s conditions of confinement are “meaningfully different from criminal punishment.” *German Santos*, 965 F.3d at 211. When assessing the reasonableness of a petitioner’s detention, “we cannot ignore the conditions of confinement.” *Id*. at 212–13 (citing *Chavez-Alvarez*, 783 F.3d at 478). As

explained by the *Foula Bah* court: "In particular, a district court must examine the factual circumstances particular to the petitioner in order to assess whether "his detention is indistinguishable from criminal punishment[,]" "[d]espite its civil label[.]" *See* [*German Santos*, 965 F.3d] at 210. *Foula Bah*, 2026 WL 2561261, at *3.

Here, Respondents' discussion of the current conditions of confinement at MVPC is limited to: (1) "[c]onditions of confinement at MVPC are no different from those of hundreds of other detainees and are not akin to criminal punishment;" (2) "MVPC only houses individuals detained for immigration purposes;" (3) "[u]nlike in *German Santos*, Zazai is not 'detained in prison alongside convicted criminals,' but instead is held at an immigration-specific processing center;" and (4) also unlike in *German Santos*, Zazai does not allege that he is confined to his cell for twenty-three hours per day," (Doc. 10 at 12), and Petitioner only asserts "[w]hile Petitioner is in civil detention, the length of detention should be considered in considering this factor." (Doc. 13 at 6).

Based on this limited, largely conclusory information, the Court finds that it lacks sufficient evidence to meaningfully address the fourth *German Santos* factor, whether the conditions of confinement at MVPC are not "meaningfully different from criminal punishment." Accordingly, in the absence of a more developed record as to this *German Santos* factor, this factor is neutral.

In conclusion, the Court finds, upon balancing the *German Santos* factors as applied to the known facts of this case, where two (2) of the *German Santos* factors weigh in Petitioner's favor, including the most important one, duration of detention, and two (2) *German Santos* factors remains neutral, that Petitioner's detention has become unreasonable.

The Court further finds, as to relief, that Petitioner is to be afforded a constitutionally adequate bond hearing before an IJ, and not immediate release. *See German Santos*, 965 F.3d at 213 (concluding: "As of today, German Santos has been detained for more than two-and-a-half years. That is an unreasonably long time, and there is no end in sight. All the while, he has been in prison. Although neither side is to blame for the delay, the other three factors compel us to hold that German Santos's detention has grown unreasonable. He is thus entitled to a bond hearing to gauge whether he still needs to be detained to keep him from fleeing or committing more crimes."). *See also A.L.*, 761 F.Supp.3d at 826–27 (after applying the four *German Santos* factors and determining that the detention of the Section 1225(b) detainee, who had been held in custody for more than 10 months without a bond hearing, was unreasonable, court ordered a bond hearing, and not immediate release).

Moreover, at Petitioner's bond hearing, "[t]o justify his continued detention, [Respondents] must show, by clear and convincing evidence, that [Petitioner] would likely flee or pose a danger to the community if released. If it cannot, it must release him." *German Santos*, 965 F.3d at 214.

Accordingly, the Court GRANTS Petitioner's habeas petition and ISSUES the writ on these terms: (1) Respondents shall cause Petitioner to be taken to a neutral immigration judge ("IJ") of the Executive Office of Immigration Review for an individualized bond hearing to occur within 30 days of this Order, or else release Petitioner by such date; (2) Respondents shall ensure that such a hearing includes the required due process, *i.e.*, at a minimum, factfinding based on a record produced before the decisionmaker and disclosed to Petitioner; an opportunity to make arguments on the Petitioner's behalf; and the right to an individualized determination of Petitioner's interests. *See Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL

574624, at *2 (3d Cir. Feb. 25, 2022); and (3) Petitioner shall be responsible for securing the necessary transcripts and record of the bond hearing. The Court trusts the IJ to comply with this Order and ensure that Petitioner is provided due process, and therefore, the IJ shall explain his or her individualized determination on the record. *See Kamara v. Atty Gen. of U.S.*, 420 F.3d 202, 212 (3d Cir. 2005). Further, at the ordered bond hearing, the burden shall be placed on Respondents to prove, by clear and convincing evidence, that continued detention is warranted to prevent Petitioner from fleeing or harming the community, and if they cannot, Petitioner must be released.

Otherwise, Petitioner's habeas petition is DENIED, including to the extent that Petitioner seeks immediate release and seeks an Order that requires the IJ at the ordered bond hearing to take into account Petitioner's ability to pay a bond. (Doc. 1 at 10). More specifically, the Court will not, at present, order the IJ to consider Petitioner's ability to pay a bond. Rather, the Court will "allow the IJ to determine in the first instance whether the additional procedural safeguards requested by Petitioner are necessary or appropriate. In the event that Petitioner believes the IJ has not afforded him *constitutionally* adequate *procedures*, independent of the IJ's ultimate ruling, he may apply to this Court for further relief." *Brito Rivero v. Oddo*, Civ. No. 3:26-776, 2026 WL 1382246, at *2 (W.D. Pa. May 18, 2026) (Fischer, J.).

SO ORDERED this 28th day of October, 2026,

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel of Record